## UNITED STATES DISTRICT COURT
### for the DISTRICT OF COLUMBIA

```
-----------------------------------------------------------------X
MARINE WHOLESALE & WAREHOUSE CO.          :
727 West Capitol Drive                    :
San Pedro, CA 90731,                      :
                                          :
          Plaintiff,                      :
                                          :
     v.                                   :
                                          :
UNITED STATES OF AMERICA                  :
c/o U.S. Attorney's Office                :
Judiciary Building                        :
555 Fourth Street, N.W.                   :
Washington, DC 20530,                     :
                                          :
ALCOHOL & TOBACCO TAX & TRADE             :      No. 17-cv-1300
BUREAU                                    :
1310 G Street, N.W.                       :
Washington, DC 20005                      :
                                          :
               and                        :
                                          :
JOHN J. MANFREDA, in his official capacity as  :
Administrator, Alcohol & Tobacco Tax & Trade   :
Bureau                                    :
1310 G Street, N.W.                       :
Washington, DC 20005,                     :
                                          :
          Defendants.                     :
-----------------------------------------------------------------X
```

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, MARINE WHOLESALE & WAREHOUSE CO. (MWW), by and through undersigned counsel, for its Complaint against Defendants, the UNITED STATES (the "GOVERNMENT"), the ALCOHOL & TOBACCO TAX & TRADE BUREAU (TTB), and JOHN J. MANFREDA, in his official capacity as administrator of TTB, does hereby state and allege as follows:

**CAUSE OF ACTION**

1.      This action under the provisions of 5 U.S.C. §§ 702 and 706 seeks declaratory and injunctive relief to hold unlawful and set aside the unlawful, arbitrary and capricious decision of TTB, dated March 31, 2017, terminating MWW's Export Warehouse Proprietor's Permit for tobacco Export Warehouse EW-CA-5 in San Pedro, California.  This action is also brought under 5 U.S.C. §§ 553(b), 558, 702 and 706 seeking declaratory and injunctive relief against (1) TTB's promulgation of a substantive rule of general applicability without advance notice and comment and (2) TTB's revocation of MWW's Tobacco Export Warehouse Proprietor's Permit, its Alcohol Importer's Basic Permit, and its Alcohol Wholesaler's Basic Permit, without advance notice and an opportunity to achieve compliance with legal and regulatory requirements.

**PARTIES**

2.      Plaintiff, MARINE WHOLESALE & WAREHOUSE CO., is a California corporation with its principal place of business located in the State of California.

3.      Defendant the UNITED STATES is the federal sovereign defendant.

4.      Defendant the ALCOHOL & TOBACCO TAX & TRADE BUREAU is an agency within the Treasury Department headquartered in the District of Columbia. On January 24, 2003, TTB assumed the revenue-based authority formerly committed to the former Bureau of Alcohol, Tobacco, and Firearms.  Homeland Security Act of 2002, Pub. L. No. 107-296, § 1111; 116 Stat. 2274.

5.      Defendant JOHN J. MANFREDA is the administrator of TTB, who maintains his office in the District of Columbia.

## JURISDICTION AND VENUE

6.      The federal district courts have original jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. §§ 1331 (arising under the laws of the United States) and 1346 (against the United States as defendant), and § 1361 (to compel agency action).

7.      The decision challenged in this action is final agency action.

8.      There is an actionable and justiciable controversy between MWW and Defendants requiring resolution by this Court.

9.      This Court has personal jurisdiction over Defendants.

10.     Venue is this District is proper pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e).

11.     This Court may grant declaratory and injunctive relief pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 553(b), 558, 702, and 706, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12.     This action does not seek to restrain the assessment or collection of a tax, within the meaning of the Tax Anti-Injunction Act, 28 U.S.C. § 7421(a).

13.     This action seeks relief only on whether MWW's TTB Tobacco Export Warehouse Proprietor's Permit, Alcohol Importer's Basic Permit, and Alcohol Wholesaler's Basic Permit automatically terminated in January 2013, and whether TTB provided MWW with due process before TTB's *de facto* and *de jure* revocation of MWW's Tobacco Export Warehouse Proprietor's Permit and its two alcohol basic permits by its letter of March 31, 2017.

**STANDING**

14.     MWW has standing to bring this action under 5 U.S.C. § 558 and 26 U.S.C. ("I.R.C.") § 5713(b) as a licensee of TTB denied the notice and opportunity to achieve compliance prescribed therein, and under 5 U.S.C. § 702 as a person directly and adversely aggrieved by final agency action.


**STATEMENT OF FACTS**

15.     Since 1933, MWW has operated a TTB-bonded tobacco export warehouse and a U.S. Customs and Border Protection (CBP)-bonded warehouse at its location at 727 West Capitol Drive, San Pedro, California 90731.

16.     Prior to January 15, 2013, MWW operated TTB tobacco export warehouse EW-CA-5, receiving untaxpaid tobacco products therein, and removing untaxpaid tobacco products therefrom for delivery under CBP supervision to vessels eligible to receive such products as supplies for consumption on the high seas beyond the jurisdiction of U.S. tobacco excise laws in accordance with the terms of 19 U.S.C. §§ 1309 and 1371, I.R.C. § 5704(b), 19 C.F.R. §§ 10.59–.65, and 27 C.F.R. §§ 44.61(a) and 44.62, which are the best evidence of their contents.

17.     Prior to March 31, 2017, MWW made tax exempt sales of imported alcohol products from its CBP-bonded warehouse under two TTB-issued permits, an Alcohol Importer's Basic Permit, CA-I-4940, and an Alcohol Wholesaler's Basic Permit, CA-P-8736.

18.     Prior to December 15, 2012, Robert L. Hartry  the principal shareholder of MWW, holding 80.4% of the shares of the corporation. The remaining shares were owned 5% by Robert H. Hartry, son of Robert L. Hartry, and 14.6% by Eric M. Hartry, son of Robert L. Hartry.

Members of the Hartry family who are required to be treated as a single shareholder of a Subchapter S Corporation, owned a controlling 100% of the company shares.

19.     MWW duly reported to TTB the ownership, officers, directors, and stockholders of the corporation in connection with its permits, which TTB approved. .

20.     On or about December 31, 2012, Mr. Hartry transferred a percentage of MWW shares such that, after the transfer, the shareholdings were as follows: Robert L. Hartry, 45.4%; Robert H. Hartry, and Eric M. Hartry, his sons, 25% and 14.6%, respectively; and Mr. Jerry Anderson, 15%.   Members of the Hartry family, who are required to be treated as a single shareholder of a Subchapter S Corporation, owned a controlling 85% of the company's shares.

21.     I.R.C. § 1361(c)(1), which is the best evidence of its contents, provides that all members of a family, defined as a common ancestor, any lineal descendant thereof, and any spouse or former spouse thereof, shall be treated as one shareholder for purposes of federal tax treatment of an S-corporation.

22.     Excise taxes on tobacco products are provided for in Chapter 52 of the Internal Revenue Code.

23.     Excise taxes on alcohol products are provided for in Chapter 51 of the Internal Revenue Code.

24.     MWW is and has been an S-corporation for federal tax purposes at all times relevant to this.

25.     ATF issued to MWW an Export Warehouse Proprietor's Permit, No. EW-CA-5, effective February 12, 2002.

26.     MWW has timely paid to TTB the $1000 Special Occupational Tax on export warehouse proprietors for the period through June 30, 2017.

27.     MWW has submitted to TTB, and TTB's Director National Revenue Center has accepted and approved, an export warehouse proprietor's Tobacco Surety Bond No. S8004392 in the amount of $50,000 the maximum estimated amount of tax liability determined by TTB that may constitute a charge against the bond covering export warehouse No. EW-CA-5.

28.     ATF issued to MWW an Alcohol Importer's Basic Permit, No. CA-I-4940, effective November 6, 2001.

29.     ATF issued to MWW an Alcohol Wholesaler's Basic Permit, No. CA-P-8736, effective November 6, 2001.

30.     Since ATF issued MWW the aforementioned permits, MWW has operated under such permits.

31.     By letter styled as a notice to cease and desist, dated March 31, 2017, from the Director of TTB's National Revenue Center (NRC), asserted that, since January 15, 2013, MWW has been operating without valid export warehouse proprietor, alcohol importer, or alcohol wholesaler permits, such permits having allegedly terminated automatically pursuant to I.R.C. § 5713, 27 U.S.C. § 204(g), and 27 C.F.R. §§ 1.44 and 44.107, for an "unreported change in control of MWW" and, more specifically, for (a) failure to apply for new permits within thirty days of the "lease, sale, or other voluntary transfer" of an alcohol permit and (b) failure to notify TTB and apply for new permits within thirty days of an unstated event constituting the "issuance, sale, or transfer of the stock of a corporation, operating as an export warehouse proprietor, [that] results in a change in the identity of the principal stockholders exercising actual or legal control over the operations of the corporation."   A copy of this notice, which is the best evidence of its contents, is appended as Complaint Exhibit A.

32.     27 C.F.R. § 1.44, which is the best evidence of its contents, provides:

No basic permit shall be leased, sold, or otherwise voluntarily transferred, and, in the event of such lease, sale, or other voluntary transfer, such basic permit shall automatically terminate thereupon. If any basic permit is transferred by operation of law or if actual or legal control of the permittee is acquired, directly or indirectly whether by stock ownership or in any other manner, by any person, then such permit shall be automatically terminated at the expiration of 30 days thereafter: Provided, That if within such 30-day period application for a new basic permit is made by the transferee or permittee, respectively, then the outstanding basic permit shall continue in effect until such time as the application is finally acted upon.

33.     Control of MWW has not been acquired by a new stockholder or in any other manner.  The Hartry family, as a single shareholder, retains 85% of the stock, and Mr. Hartry continues to serve as president.

34.     27 C.F.R. § 44.107, which is the best evidence of its contents, provides:

Where the issuance, sale, or transfer of the stock of a corporation, operating as an export warehouse proprietor, results in a change in the identity of the principal stockholders exercising actual or legal control of the operations of the corporation, the corporate proprietor shall, within 30 days after the change occurs, make application for a new permit; otherwise, the present permit shall be automatically terminated at the expiration of such 30-day period, and the proprietor shall dispose of all cigars, cigarettes, and cigarette papers and tubes on hand, in accordance with this part, make a closing inventory and closing report, in accordance with the provisions of §§ 44.146 and 44.151, respectively, and surrender his permit with such inventory and report.  If the application for a new permit is timely made, the present permit shall continue in effect pending final action with respect to such application.

35.     The transfer of MWW stock did not result in a change in the identity of the principal stockholders exercising control of MWW.  The Hartry family, as a single shareholder, retains 85% of the stock, and Mr. Hartry continues to serve as president.

36.     ATF Industry Circular 73-7, which is the best evidence of its contents, requires reporting of "a change in the identity of the principal stockholders exercising actual or legal control of the operations of the corporation."

37.     I.R.C. § 5713(b), which is the best evidence of its contents, requires that a tobacco export warehouse proprietor permit holder receive an order from the Secretary of the Treasury

giving notice of facts charged and an opportunity for a hearing before suspension or revocation of a permit.

38.   27 U.S.C. § 204(e), which is the best evidence of its contents, requires that an alcohol basic permit holder receive an order from the Secretary of the Treasury giving notice of facts charged and an opportunity for a hearing before suspension or revocation of a permit.

39.   I.R.C. § 5713(a) and 27 C.F.R. § 44.82, which are the best evidence of their contents, require a TTB permit to engage in the business of tobacco export warehouse proprietor.

40.   27 U.S.C. § 203(a) and 27 C.F.R. § 1.20, which are the best evidence of their contents, require a TTB permit to engage in the business of importing alcohol products.

41.   27 U.S.C. § 203(c) and 27 C.F.R. § 1.22, which are the best evidence of their contents, require a TTB permit to engage in the business of selling alcohol products at wholesale.

42.   I.R.C. § 5722, which is the best evidence of its contents, requires only tobacco manufacturers, importers, and export warehouse permit holders to file reports with TTB.

43.   TTB has treated MWW as a tobacco export warehouse proprietor permit holder continuously since 2002.  TTB has accepted MWW's monthly filing of Form 5200.14; it has accepted MWW's notifications of its owners, directors, and officers; and it has accepted MWW's Tobacco Bond securing payment of any liability from its export warehouse operations.

44.   Notwithstanding TTB's claims that MWW's tobacco export warehouse proprietor's permit automatically terminated in January 2013, the NRC continued to treat MWW as a tobacco export warehouse proprietor permit holder until March 31, 2017.

45.   MWW has exhausted its administrative remedies.  TTB has failed to make available to MWW administrative remedies prescribed in its regulations.

46.     MWW received no notice in accordance with I.R.C. § 5713(b) stating that TTB intended to revoke MWW's tobacco export warehouse proprietor's permit, the facts charged, or inviting MWW to show cause why such permit should not be revoked.

47.     MWW received no notice in accordance with 27 U.S.C. § 204(e) stating that TTB intended to revoke MWW's alcohol importer and wholesaler basic permits.

48.     TTB notified MWW by letter dated March 31, 2017 only that its tobacco export warehouse proprietor's permit and its alcohol importer and wholesaler basic permits had already terminated in January 2013.

49.     MWW received no notice in accordance with 5 U.S.C. § 558(c) that willfulness or public health, interest, or safety, required revocation of MWW's export warehouse proprietor's permit without advance notice in writing of the facts or conduct warranting revocation, without a hearing, and without an opportunity to demonstrate or achieve compliance with all lawful requirements.

50.     MWW received no notices or inquiries of any kind from TTB prior to TTB's *de facto* and *de jure* revocation MWW's Alcohol Importer's Basic Permit.

51.     MWW received no notices or inquiries of any kind from TTB prior to TTB's *de facto* and *de jure* revocation MWW's Alcohol Wholesaler's Basic Permit.

52.     TTB's decision revoking MWW's export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits has caused MWW to suffer irreparable harm through loss of current sales, damage to its reputation as a reliable supplier to its customers of untaxpaid tobacco products, damage to its reputation as a reliable business partner with its suppliers of untaxpaid tobacco products, and a loss of future business.  MWW's sales subject to TTB permits were in excess of $1,500,000 per month.

53.     Without a valid Export Warehouse Proprietor's Permit, Alcohol Import's Basic Permit, and Alcohol Wholesaler's Basic Permit, MWW is unable to accept orders and is unable to remove untaxpaid domestic tobacco products from its export warehouse and is unable to remove untaxpaid alcohol products from its customs-bonded warehouse for delivery to its established customers.  As the result, the company has lost, and will continue to lose, substantial sales.  *Id.*

54.     Based on historical sales data, TTB's revocation of MWW's Tobacco Export Warehouse Proprietor's Permit, Alcohol Importer's Basic Permit, and Alcohol Wholesaler's Basic Permit, has caused MWW to lose sales to established customers of untaxpaid tobacco products previously supplied from the warehouses warehouse.  *Id.*  MWW has lost between $500,000 and $750,000 per month in sales to eligible vessels per month since issuance of TTB's revocation, and such lost sales will continue while its permits are deemed terminated by TTB.  *Id.*

55.     Without valid TTB permits, MWW is unable to receive significant replenishment of its export warehouse inventory of untaxpaid domestic tobacco products and receive significant replenishment of its customs-bonded warehouse inventory from its suppliers to deliver orders to vessels eligible to receive such products.  *Id.*

56.     Without a valid TTB permits, MWW will be unable to supply a full range of products desired by its established customers and will lose their future business to competitors who are able to supply such a full range of products.  *Id.*

57.     After MWW's established customers find replacement sources of supply, MWW may never recover even a portion of their business due the damage to its reputation.  *Id.*

**COUNT I**
**Agency Action Taken Without Observance of Procedure Required by Law**
**(I.R.C. § 5713(b), 27 U.S.C. § 204(e), 5 U.S.C. §§ 558(c), 706(2)(D))**

58.     Paragraphs 1 through 57 of this Complaint are restated and incorporated by reference as though fully set forth herein.

59.     At all times relevant to this action, Plaintiff operated a TTB Export Warehouse, under authority of a warehouse proprietor's permit issued by Defendants.

60.     At all times relevant to this action, Plaintiff operated a CBP-bonded warehouse receiving and removing untaxpaid alcohol products under authority of alcohol importer and wholesaler basic permits issued by defendant.

61.     In connection with the operation of its TTB export warehouse, Plaintiff received transfers of tobacco products on which federal excise taxes had not been assessed, made sales and deliveries of such products to export customers in accordance with the procedures specified in relevant statutes and regulations administered by TTB and CBP, maintained a warehouse bond as required by TTB, created and maintained warehouse inventory records in a form required by TTB regulations, and filed all reports and other documents required by TTB.   During all relevant periods, plaintiff made its TTB export warehouse available for inspection by TTB officials.

62.     TTB's March 31, 2016 action claiming that Plaintiff's tobacco export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits were revoked by operation of law is final agency action and constitutes a *de facto* and *de jure* revocation of Plaintiff's tobacco export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits.

63.     TTB's present demand that Plaintiff make application for a TTB export warehouse proprietor's permit no later than January 15, 2013 constitutes a *de facto* and *de jure* revocation of

Plaintiff's tobacco export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits.

64.     Plaintiff's tobacco export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits are "licenses" for purposes of the Administrative Procedure Act, 5 U.S.C. § 551(8), and particularly 5 U.S.C. § 558.

65.     5 U.S.C. § 558(c), which is the best evidence of its contents, provides (emphasis added:

> When application for a license is required by law, the agency, with due regard for the rights and privileges of the interested parties or adversely affected persons, and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this Act and shall make its decision. *Except in cases of willfulness or those in which the public health, interest or safety requires otherwise, the withdrawal, suspension, revocation or annulment of a license is lawful only if, before institution of agency proceedings therefor, the licensee has been given—*
>
> > *(1) Notice by the agency in writing of the facts or conduct which may warrant the action; and*
> >
> > *(2) Opportunity to demonstrate or achieve compliance with all lawful requirements.*
>
> Where the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency.

66.     Defendant, prior to the commencement of proceedings to revoke, withdraw, suspend or annul Plaintiff's TTB export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits, did not provide Plaintiff with notice in writing of the facts which may warrant the action.

67.     Defendant, prior to the commencement of proceedings to revoke, withdraw, suspend or annul Plaintiff's TTB export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits, did not provide Plaintiff with any opportunity to demonstrate or

achieve compliance with all lawful requirements, including  requirements, if any, in respect of which plaintiff may have been alleged to have been deficient.

68.     On information and belief, there are no circumstances relating to the public health, interest, or safety that would relieve defendant of the obligation to provide plaintiff with the prior notice and opportunity to correct any defects pursuant to 5 U.S.C. § 558(c).

69.     5 U.S.C. § 706(2)(D) requires a reviewing court to hold any lawful and set aside agency action done "without observance of procedure required by law."

70.     To the extent Defendants have has revoked, suspended, withdrawn or annulled plaintiff's TTB export warehouse proprietor's permit and its alcohol importer's and wholesaler's permits without observance of the procedures required by 5 U.S.C. § 558(c), this Court must set aside such action as without observance of procedure required by law, in accordance with 5 U.S.C. § 706(d)(2).


## COUNT II
### Arbitrary, Capricious, and Contrary to Law Agency Action Violates (5 U.S.C. § 706(2)(A))

71.     Paragraphs 1 through 70 of this Complaint are restated and incorporated by reference as though fully set forth herein.

72.     MWW's TTB tobacco export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits became effective on February 12, 2002 (tobacco warehouse permit) and November 6, 2001 (alcohol basic permits).

73.     Since Before January 2013, and continuing through at least March, 2017, MWW has submitted and TTB has accepted MWW's export warehouse withdrawal reports on the agency's *Taxable Articles Without Payment of Tax* Form 5200.14.

74.     Since before January 2013, and continue through at least March 2017, MWW has submitted and TTB has accepted MWW's export warehouse proprietors bond.

75.     TTB's March 31, 2017 *de facto* and *de jure* decision that MWW's export warehouse proprietors permit and its alcohol importer's and wholesaler's basic permits were revoked by operation of law in January 2013 is final agency action which is arbitrary, capricious, an abuse of discretion, and contrary to law, and also constitutes agency action without observance of procedures required by law, and the Court should set it aside pursuant to 5 U.S.C. § 706(2)(A).

76.     TTB's implied decision that the transfer among members of a family of stock in an S-corporation is a change in the identity of the principal stockholders exercising actual or legal control over the operations of the corporation requiring notification to TTB, without which a TTB permit automatically terminates, is contrary to law, specifically I.R.C. § 1361(c)(1).

77.     TTB's decision that in the absence of a reissuance of stock of an S-corporation, there is a change in the identity of the principal stockholders exercising actual or legal control over the operations of the corporation requiring notification to TTB, without which a TTB permit automatically terminates, is arbitrary and capricious in that it is inconsistent with TTB's continued treatment of MWW as a valid export warehouse proprietor permit holder responsible to file reports of removals.


**COUNT III**
**Agency Action Taken Without Observance of Procedure Required by Law (5 U.S.C. §§ 553, 706(2)(D))**

78.     Paragraphs 1 through 77 of this Complaint are restated and incorporated by reference as though fully set forth herein.

79.   TTB has published no notice that stock ownership for purposes of reporting a change in identity of the principal stockholders exercising actual or legal control over the operations of a corporation is to be determined without regard to 26 U.S.C. § 1361(c)(1).

80.   TTB has published no notice that stock ownership for purposes of reporting a change in identity of the principal stockholders exercising actual or legal control over the operations of a corporation is to be determined under any special rules developed by TTB.

81.   TTB's determination that the transfer among family members of stock in an S-corporation constitutes a change in the identity of the principal stockholders exercising actual or legal control over the operation of the corporation is an agency rule of general applicability promulgated without advance notice and opportunity to comment in violation of 5 U.S.C. § 553.

82.   Section 4(b) of the Administrative Procedure Act, 5 U.S.C. § 553(b), requires that all "legislative" agency rules be issued in accordance with notice and comment rulemaking procedures.  The statute, which is the best evidence of its contents, provides:

> General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
>
> > (1) a statement of the time, place, and nature of public rule making proceedings;
> >
> > (2) reference to the legal authority under which  the rule is proposed; and
> >
> > (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.
>
> Except when notice or hearing is required by statute, this subsection does not apply—
>
> > (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
> >
> > (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

83.     The requirements of 5 U.S.C. § 553(b) apply to proceedings for the issuance of substantive rules with the force of law.  The term "rulemaking" embraces agency processes for formulating, amending or repealing such substantive rules.  5 U.S.C. § 551(5).  Any attempt by an agency to engage in rulemaking without opportunity for public comment is condemned.

84.     Substantive or legislative-type rules requiring notice-and-comment rulemaking as specified in 5 U.S.C. § 553(b) are those that relate to and change the standards of conduct, and have force of law.

85.     TTB's determination that the transfer among family members of stock in an S-corporation changes the identity of the principal stockholders exercising actual or legal control over the operations of the corporation requiring notification to TTB, without which a TTB permit automatically terminates, is a substantive rule of general applicability that is legislative in nature and that changes standards of conduct.  Such requirements may only be imposed after TTB undertakes rulemaking as specified in 5 U.S.C. § 553(b).

86.     TTB at no time published advance notice of, or sought public comment concerning, the substantive requirements of general applicability to report a change in the identity of the principal stockholders exercising actual or legal control over the operations of the corporation when the family members are treated as a single shareholder pursuant to I.R.C. 1361(c)(1).

87.     The reporting requirements set forth in TTB's letter of March 31, 2017 to MWW do not constitute "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," and are not exempt from the notice and comment rulemaking requirements set forth in 5 U.S.C. § 553(b).

88.     TTB has not made or published any determination relating to the change reporting requirement that, for "good cause," the "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," pursuant to 5 U.S.C. § 553(b)(B).

89.     Section 10(e)(2)(D) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(D), which is the best evidence of its contents, requires any reviewing court to hold unlawful, and set aside, any agency action which is "without observance of procedure required by law."

90.     To the extent that TTB's letter of March 31, 2017 to MWW purports to establish substantive, legislative rules applicable to the reporting obligations of permit holders, and to the extent said document was promulgated without "observance of procedure required by law," this Court is required to declare unlawful, and set aside, the requirements set forth in said document.

### COUNT IV
### (Excessive Fine in Violation of U.S. Const. Amend. 8)

91. Paragraphs 1 through 90 are repeated and incorporated by reference as though fully set forth herein.

92. TTB's notice of revocation of plaintiff's Tobacco Export Warehouse permit and Basic Alcohol permit constitute an effective penal seizure and forfeiture of plaintiff's property, predicated solely upon plaintiff's failure to provide TTB with certain information requested by the agency.

93. The information requested by the agency, if provided, would not have resulted in the suspension or revocation of plaintiff's Tobacco Export Warehouse permit or Basic Alcohol permits.

94. Amendment No. 8 to the Constitution of the United States [U.S. Const., Amend. 8], which is the best evidence of its contents, provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

95. Confiscation and forfeiture of plaintiff's property, in the form of its Tobacco Export Warehouse permit and Basic Alcohol Permit, for alleged failure to follow an information reporting requirement in a Federal regulation constitutes an excessive fine in violation of U.S. Const., Amend. 8, and requires the fine be set aside as unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, MARINE WHOLESALE & WAREHOUSE CO. prays that this Court enter judgment in its favor; and enter an order—

A.      Enjoining TTB from suspending or revoking MWW's export warehouse proprietor's permit no. EW-CA-5, alcohol importer's basic permit no. CA-I-4940, or alcohol wholesaler's basic permit no. CA-P-8736, without following with the advance notice, hearing, and opportunity-to-comply requirements of I.R.C. § 5713(b) and 5 U.S.C. § 558(c); and

B.      Setting aside and declaring arbitrary, capricious, and otherwise contrary to law TTB's decision requiring MWW to file applications for a new tobacco export warehouse proprietor's permit to replace no. EW-CA-5 and for a new alcohol importer's basic permit and alcohol wholesaler's basic permit to replace nos. CA-I-4940 and CA-P-8736, respectively, thereby *de facto* and *de jure* revoking MWW's existing such permits without the advance notice, hearing,

18

and opportunity to achieve compliance under its existing permits as required by I.R.C. § 5713(b) and 5 U.S.C. § 558(c); and

C.     Holding TTB's decision requiring MWW to file applications for a new tobacco export warehouse proprietor's permit to replace no. EW-CA-5 and for a new alcohol importer's basic permit and alcohol wholesaler's basic permit to replace nos. CA-I-4940 and CA-P-8736, respectively, to have been issued "without observance of procedure required by law" and to set the same aside as violating the provisions of 5 U.S.C. § 553(b) and 5 U.S.C. § 706(2)(D); and

D.     Holding TTB's decision requiring MWW to file applications for a new tobacco export warehouse proprietor's permit to replace no. EW-CA-5 and for a new alcohol importer's basic permit and alcohol wholesaler's basic permit to replace nos. CA-I-4940 and CA-P-8736, respectively, to have been issued *ultra vires* by TTB, in violation of the requirements of 5 U.S.C. § 553(b) and 5 U.S.C. § 706(2); and

E.     Providing such other and further relief as this Court may deem just.

Respectfully submitted,

   /s/ John M. Peterson
Michael K. Tomenga (D.C. Bar No. 257006)
John M. Peterson (N.Y. Bar No. NY0103)
NEVILLE PETERSON LLP
1400 16th Street, N.W., Suite 350
Washington, DC 20036
(202) 861-2959
June 30, 2017                    mtomenga@npwdc.com